<u>**NOT FOR PUBLICATION**</u>

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| BOEHRINGER INGLEHEIM PHARMA GMBH & CO. KG, *et al.*, | : : : : | Civil Action No. 14-7811 (lead) Civil Action No. 15-1662 |
| Plaintiffs, | : : | Civil Action No. 15-7880 |
| v. | : : | **MEMORANDUM OPINION** |
| TEVA PHARMACEUTICALS USA, INC., *et al.*, | : : : | **FILED UNDER TEMPORARY SEAL** |
| Defendants. | : : | |

**MARTINOTTI, DISTRICT JUDGE**

Before this Court is an appeal by Defendants Breckenridge Pharmaceutical, Inc. ("Breckenridge") and Mylan Pharmaceuticals Inc. ("Mylan") (collectively, "Defendants") (ECF No. 285) of Judge Tonianne J. Bongiovanni's June 16, 2017 Letter Order (the "Letter Order") (ECF No. 283)[1] striking portions of Defendants' expert reports. Plaintiffs Boehringer Ingelheim Pharma GmbH & Co. KG, Boehringer Ingelheim International GmbH, and Boehringer Ingelheim Pharmaceuticals, Inc. (collectively, "Boehringer") oppose the appeal. (ECF No. 293.) Pursuant to Federal Rule of Civil Procedure 78(b), the Court did not hear oral argument. On September 20, 2017, Boehringer and Breckenridge notified the Court of their negotiated settlement agreement (ECF No. 313) and, on September 22, 2017, the Court entered a Consent Judgment and Order of Permanent Injunction. (ECF No. 314.) Accordingly, Breckenridge's appeal is **DENIED AS MOOT** and only Mylan's appeal remains. (*See* ECF No. 313 (indicating that Boehringer "will

---

[1] Two related cases (Case Nos. 15-1662 and 15-7880) have been consolidated into lead Case No. 14-7811. Unless otherwise specified, all ECF docket citations are to Case No. 14-7811.

dismiss Breckenridge from the case" but "[t]he case will continue with respect to Boehringer's claims against the remaining defendants").) For the reasons set forth below, Mylan's appeal is **DENIED** and Judge Bongiovanni's Letter Order is **AFFIRMED**.

I. **BACKGROUND**

This is a Hatch-Waxman case. Boehringer brought this case against Defendants alleging infringement of, *inter alia*, claims 7 and 9 of U.S. Patent No. 6,087,380 (the '380 patent). Pursuant to a scheduling order entered by Judge Bongiovanni (ECF No. 74), the parties filed a Joint Claim Construction and Prehearing Statement in November 2015 seeking construction of claim 7 of the '380 patent (ECF No. 119 at 9). The parties completed briefing on the claim 7 construction issue, and the Court issued a claim construction ruling following a *Markman* hearing on November 17, 2016. (ECF No. 247 and ECF No. 249.) The parties did not indicate in the Joint Claim Construction and Prehearing Statement or during the *Markman* hearing that any term in claim 9 required construction. (ECF No. 119 and ECF No. 249.)

However, Boehringer's expert, Dr. Stephen Davies, opined in his initial expert report that the products described in the Defendants' Abbreviated New Drug Applications ("ANDAs") would infringe claim 9 of the '380 patent.[2] (ECF No. 286-5.) Claim 9 of the '380 patent reads, in its entirety: "1-Methyl-2-[N-[4-(N-n-hexyloxycarbonylamidino)phenyl] aminomethyl]-benzimidazol-5-yl-carboxylic acid-N-(2-pyridyl)-N-(2-ethoxycarbonylethyl) amide or a physiologically acceptable salt thereof." ('380 patent (ECF No. 1, Ex. A), col. 92, ll. 47–49.) Dr. Davies' infringement opinions were based on his view that claim 9 encompasses dabigatran

---

[2] In a Hatch-Waxman patent case, the actual act of infringement is the filing of an ANDA to obtain approval to engage in the commercial manufacture, use, or sale of a patented drug or method of use. *See* 35 U.S.C. § 271(e)(2).

2

etexilate (which has the chemical formula recited in the claim) as well as dabigatran etexilate mesylate, which Dr. Davies claimed is "a physiologically acceptable salt of dabigatran etexilate."[3] (ECF No. 286-5 at 8.) Dr. Davies opined that Defendants' respective ANDA products are "dabigatran etexilate mesylate products, which contain dabigatran etexilate," and therefore infringe claim 9. (*Id.* at 8-9.)

Defendants' experts filed responsive reports arguing the Defendants' ANDA products do not infringe claim 9. (ECF No. 286-10; ECF No. 286-11; ECF No. 286-12.) In their view, claim 9 encompasses only a single compound with a particular structure, and Defendants' ANDA products do not have that structure. (ECF No. 286-10 at 27-34.)

Boehringer subsequently requested that Judge Bongiovanni strike portions of Defendants' expert reports on the grounds that Defendants' arguments about claim 9—*i.e.*, that the claim encompasses only one compound with a particular structure—amounted to an impermissibly late claim construction. (ECF No. 257 and ECF No. 268.) Defendants filed response letters arguing against the exclusion of their experts' opinions. (ECF No. 266 and ECF No. 270.) Judge Bongiovanni, after reviewing the submissions, issued a Letter Order striking the challenged portions of Defendants' expert reports and ordering Defendants to submit new rebuttal reports consistent with the Letter Order. (ECF No. 283.) Defendants timely appealed and now ask the Court to vacate the Letter Order. (ECF No. 286).

---

[3] Defendants in their *Markman* brief referred to the formula described in claim 9 as dabigatran etexilate. (ECF No. 128 at 9.) Boehringer's *Markman* brief also described the compound recited in claim 9 as dabigatran etexilate. (*See, e.g.*, ECF No. 130 at 15) ("The specification then identifies preferred prodrug groups, which specifically include those groups cleaved in vivo from dabigatran etexilate (claim 9) to form dabigatran (claim 7).")

## II. LEGAL STANDARD

A magistrate judge may hear and determine any non-dispositive pre-trial matter pending before the court pursuant to 28 U.S.C. § 636(b)(1)(A). A party may appeal a magistrate judge's non-dispositive order within fourteen days of being served with a copy of the order. Fed. R. Civ. P. 72; L.Civ.R. 72.1(c). The district court will only reverse a magistrate judge's order on a pretrial matter if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L.Civ.R. 72.1(c)(1)(A).

"A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Marks v. Struble*, 347 F. Supp. 2d 136, 149 (D.N.J. 2004) (citation and alteration omitted). Mere disagreement with the magistrate judge's finding is insufficient for reversal, and a district judge may not consider evidence not before the magistrate judge. *See Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992); *Andrews v. Goodyear Tire & Rubber Co.*, 191 F.R.D. 59, 68 (D.N.J. 2000). A district judge may find a magistrate judge's decision "clearly erroneous" when it is "left with the definite and firm conviction that a mistake has been committed." *Dome Petroleum Ltd. v. Employers Mut. Liab. Ins. Co.*, 131 F.R.D. 63, 65 (D.N.J. 1990) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)); *accord Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008). However, "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Waterman*, 755 F.3d 171, 174 (3d Cir. 2014) (quoting *Anderson v. Bessemer City*, 470 U.S. 564, 574 (1985)). A ruling of a magistrate judge is "contrary to law if the Magistrate Judge misinterpreted or misapplied the applicable law." *Marks*, 347 F. Supp. 2d at 149.

A magistrate judge's legal conclusions on a non-dispositive motion will be reviewed *de novo*. *See Haines*, 975 F.2d at 91 ("The district court is bound by the clearly erroneous rule in findings of facts; the phrase 'contrary to law' indicates plenary review as to matters of law."). The appellant bears the burden of demonstrating that the magistrate judge's decision meets the standard for reversal. *See Exxon Corp. v. Halcon Shipping Co.*, 156 F.R.D. 589, 591 (D.N.J. 1994).

### III.   DECISION

The following is a brief summary of the arguments made to Judge Bongiovanni about whether to strike portions of Defendants' expert reports and the reasoning in the Letter Order.

#### A.   Boehringer's Request to Strike

Boehringer asked Judge Bongiovanni to strike certain portions of the expert reports of John Doll, Salvatore D. Lepore, and Nicholas M. Fleischer.  (ECF No. 257 at 10.)  All three experts offered opinions related to the scope of claim 9 of the '380 patent. (*See, e.g.*, ECF No. 286-10 at 27-34; ECF No. 286-11 at 4-8; ECF No. 286-12 at 11-12.) Boehringer argued that Defendants' efforts to limit the scope of claim 9 based on the specification and prosecution history of the '380 patent should have been raised during the claim construction process. (ECF No. 257 at 6–8.) Boehringer stated the parties engaged in lengthy claim construction proceedings over whether claim 7 should be limited in scope. (*Id.* at 7–8.) Defendants, Boehringer argued, could have raised their arguments to limit the scope of claim 9 during those claim construction proceedings but declined to do so. (*Id.*) Raising those arguments in subsequent exert reports, in Boehringer's view, circumvented the Local Patent Rules that provide for specific timelines for disclosing proposed claim constructions and exchanging pertinent evidence. *See* L.Pat.R. 4.

Boehringer further claimed that allowing the challenged expert opinions would prejudice both Boehringer and the Court. (ECF No. 257 at 8-9.) First, Boehringer noted that allowing those

5

opinions would "jumble the claim construction process together with . . . expert discovery," which would force the Court to "consider *Markman* issues at trial on an incomplete record." (*Id.*) Boehringer would also have to respond to Defendants' arguments within the limited time afforded to prepare reply expert reports, rather than the lengthier time available for claim construction briefing. (*Id.* at 9.) Boehringer further noted fact discovery had closed, which would make it harder for Boehringer to respond to the challenged opinions. (*Id.*)

Defendants asserted in response that their experts were offering appropriate non-infringement opinions and not new claim construction arguments. (ECF No. 266 at 1–2.) Defendants argued Boehringer had long been aware of their arguments about the scope of claim 9 and consequently were not prejudiced by the opinions of Defendants' experts. (*Id.* at 3-4.) In Defendants' view, any arguments over the scope of claim 9 amount to "a different opinion regarding an ordinary and customary meaning" rather than a dispute that needed to be addressed during claim construction proceedings. (*Id.* at 4, 5-6.) Defendants also argued Boehringer's position on the scope of claim 9 was itself an impermissible attempt at claim construction (*i.e.*, by "trying to *broaden* the ordinary and customary meaning of claim 9, and further trying to shift blame to Defendants for its own failure to propose a construction for the plain and ordinary meaning of claim 9"). (*Id.* at 7.) Boehringer, in reply, reiterated Defendants' claim 9 arguments amounted to a limiting claim construction. (ECF No. 268 at 3.)

### B. The Letter Order

Judge Bongiovanni agreed with Boehringer, finding the challenged opinions of Defendants' experts amounted to impermissibly late claim construction arguments. (ECF No. 283 at 2–3.) As Judge Bongiovanni explained:

> [Defendants] through their experts are essentially attempting to secure a limiting construction of the chemical name set forth in

6

> claim 9 that was not advocated for during the claim construction proceedings. If [Defendants] wanted the scope of claim 9 to be narrowed from the chemical name as it now appears to the chemical name having the specific chemical structure identified [during prosecution of the '380 patent], it was incumbent upon them to raise this limitation at the appropriate time during the claim construction proceedings outlined in the Court's scheduling order and governed by L.Pat.R. 4.1-4.6 . . . . Indeed, this limitation should have been identified in [Defendant]'s exchange of proposed terms for construction due on September 18, 2015, their exchange of preliminary claim constructions due on October 1, 2015, the parties' Joint Claim Construction and Prehearing Statement submitted on November 9, 2015, their *Markman* briefing submitted on January 15 and March 31, 2016, and during the claim construction hearing held on November 17, 2016.

(*Id.* at 3.)

Judge Bongiovanni also concluded good cause did not exist to modify the scheduling orders in place to allow Defendants to pursue a new claim construction. (*Id.* at 4.) Specifically, she observed Defendants "certainly knew how to propose limiting constructions for claim terms." (*Id.*) Accordingly, Judge Bongiovanni struck "all portions of [Defendants'] rebuttal expert reports relying on claim 9 of the '380 patent being limited to the chemical structure identified above." (*Id.* at 5.)

### C. Analysis

Defendants raise four arguments in support of their Motion. (ECF No. 286.) First, they submit Judge Bongiovanni made an error of fact by finding Defendants' expert reports raised a new claim construction issue. (*Id.* at 8-10.) Second, they claim Judge Bongiovanni made an error of law by "effectively adopting Plaintiffs' broadening construction" without an appropriate review of the relevant evidence. (*Id.* at 7.) Third, they argue Judge Bongiovanni's decision to strike portions of Defendants' expert reports was an unreasonably harsh sanction. (*Id.* at 12-15.) Fourth, they argue Judge Bongiovanni lacked the authority to issue a claim construction ruling because

7

this Court had not referred the issue to Judge Bongiovanni for determination. (*Id.* at 11.) The Court will address each argument in turn.

1. ***Alleged Errors of Fact***

Defendants argue Judge Bongiovanni factually erred by finding Defendants' experts raised new claim construction issues. (ECF No. 286 at 8-10.) In their view, the challenged opinions are properly considered non-infringement opinions. They note Breckenridge's non-infringement contentions, filed more than a year before the exchange of expert reports, contained a similar argument about the scope of claim 9. (*Id.*; *see also* ECF No. 286-6 at 2–3.) Boehringer, in response, acknowledges that Breckenridge sought to limit the scope of claim 9 in its non-infringement contentions, but underscores that Defendants declined to seek that narrowing construction during claim construction proceedings. (ECF No. 293 at 5-8.)[4]

The court disagrees with Defendants argument that Judge Bongiovanni erred by finding portions of Defendants' expert reports amounted to an impermissibly late attempt at claim construction. Claim 9 of the '380 patent recites a chemical formula and its physiologically acceptable salts without any additional limitation. ('380 patent, col. 92, ll. 47–49.) As noted above, Breckenridge argued as early as 2015 that claim 9 should be understood to encompass only molecules with a particular chemical structure based on statements Boehringer made in prosecuting the '380 patent. (ECF No. 286-6 at 2–3.) Whether the scope of a claim is limited by a patent's prosecution history is plainly something that could have been addressed during claim construction proceedings. As the Federal Circuit has explained:

---

[4] Boehringer similarly argued in its *Markman* brief that "[a]lthough [Defendants] previously raised a noninfringement argument for claim 9 premised on a meritless assertion that the scope of claim 9 was limited by a prosecution history disclaimer . . . their argument is no longer in the case because [Defendants] did not seek a narrowing construction of claim 9 in the joint claim chart or in this Markman proceeding." (ECF No. 130 at 5 n.5.)

8

> In many cases that give rise to litigation . . . determining the ordinary and customary meaning of the claim requires examination of terms that have a particular meaning in a field of art. Because the meaning of a claim term as understood by persons of skill in the art is often not immediately apparent, and because patentees frequently use terms idiosyncratically, the court looks to those sources available to the public that show what a person of skill in the art would have understood disputed claim language to mean. Those sources include the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.

*Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (*en banc*) (citations omitted). Indeed, the prosecution history of a patent is one of the primary sources of evidence evaluated in claim construction proceedings. *See id.* (*citing Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995)).

It is true that disputes over the meaning of particular claim terms may not be immediately apparent and that claim construction questions may arise in later stages of litigation. In this case, it is clear the parties were aware prior to the initiation of claim construction proceedings that there was an open dispute about whether the compound identified in claim 9 of the '380 patent should be limited to a particular chemical structure based on statements in the prosecution history of that patent. (ECF No. 286-6 at 2–3.) Despite being aware of the issue, however, Defendants declined to raise the issue during the claim construction proceedings. As Judge Bongiovanni stated Defendants "certainly knew how to propose limiting constructions for claim terms"— they explicitly sought a narrowing construction of claim 7 based on, *inter alia*, statements in the patent's prosecution history. (ECF No. 283 at 4.) Under these circumstances, the Court cannot conclude that Judge Bongiovanni clearly erred in finding the challenged expert opinions included impermissibly late claim construction arguments. The Court declines to vacate the Letter Order on those grounds.

### 2. *Alleged Errors of Law*

Defendants' second argument is that Judge Bongiovanni made an error of law by purportedly adopting Boehringer's' "construction" of claim 9. (ECF No. 286 at 10-11 and ECF No. 300 at 7–8.) They characterize the Letter Order as "effectively adopt[ing] Plaintiffs' expert view on the plain and ordinary meaning of claim 9 of the '380 patent," which allegedly expands the scope of claim 9 to include the compound now known as dabigatran etexilate. (ECF No. 286 at 10*.*) Defendants claim this alleged *de facto* construction was legally improper because it did not properly assess the types of evidence that should be considered during claim construction. (*Id.* at 11.) Boehringer, in response, argues its expert's opinions were consistent with Boehringer's longstanding position that claim 9 "requires no construction because it is simply a chemical name, which encompasses dabigatran etexilate." (ECF No. 293 at 15.)

The Court disagrees with Defendants argument that the Letter Order "effectively adopted" a broadening construction of claim 9. The Letter Order does not analyze the scope of claim 9 or the plain and ordinary meaning of its terms (*see* ECF No. 283), nor did Judge Bongiovanni address other disputes between the parties, such as whether claim 9 encompasses dabigatran etexilate. Because Judge Bongiovanni did not explicitly or implicitly construe the terms of claim 9, the Court rejects Defendants' argument that Judge Bongiovanni committed legal error by improperly construing that claim and therefore declines to vacate the Letter Order on those grounds.

### 3. *Appropriateness of Exclusion*

Defendants' third argument is the Letter Order imposed an unreasonably harsh sanction by excluding portions of their expert reports. (ECF No. 286 at 12-15.) They dispute Boehringer has suffered any prejudice or surprise given Breckenridge's earlier non-infringement contentions, and submit Boehringer has an adequate opportunity to respond to the challenged opinions.  (*Id.* at 12-

10

13.) Defendants argue they have not engaged in any bad faith, and stress the importance of the excluded evidence. (*Id.* at 14-15.) At the very least, Defendants suggest the Court engage in a new claim construction proceeding. (*Id.* at 13-14.) Boehringer maintains Judge Bongiovanni properly exercised discretion in excluding the challenged opinions under our Local Patent Rules and the Court's scheduling orders. (ECF No. 293 at 112-13.) Boehringer also claims it would suffer undue prejudice by having to respond to Defendants' arguments and cites the importance of adhering to our Local Patent Rules.  (*Id.* at 17-21.)

The Court finds Judge Bongiovanni was within her discretion to exclude the challenged opinions. Our Local Patent Rules are designed to "further the goal of full, timely discovery and provide all parties with adequate notice and information with which to litigate their cases." *King Pharm., Inc. v. Sandoz Inc.*, No. 08-5974, 2010 WL 2015258, at *4 (D.N.J. May 20, 2010). To that end, they focus on requiring parties to "crystallize their theories of the case early in the litigation and to adhere to those theories once they have been disclosed." *Id.* One of the many ways our Local Patent Rules encourage timely disclosure of the parties' theories is by setting forth a framework for claim construction proceedings with enumerated timelines for briefing and exchanges of evidence. *See* L.Pat.R. 4.1–4.6. Adhering to that framework is particularly important in Hatch-Waxman cases, which frequently have accelerated litigation timelines. *See Shire, LLC v. Amneal Pharm., LLC*, No. 11-3781, 2014 WL 9913150, at *1 (D.N.J. May 12, 2014) ("[T]he Local Patent Rules emphasize '*ultra* early disclosure of infringement and invalidity contentions for patent cases arising under the Hatch-Waxman Act.'" (quoting *Sanofi–Aventis v. Barr Labs.*, 598 F. Supp. 2d 632, 637 (D.N.J. 2009)).

It is clear from the Letter Order Judge Bongiovanni found Defendants had willfully declined to raise their arguments related to claim 9 during the claim construction proceedings. As

11

Judge Bongiovanni explained, "[t]here is no reason [Defendants] did not pursue the limiting construction for claim 9 that their rebuttal experts now rely upon. . . . Neither Mylan nor Breckenridge were diligent in raising this claim construction issue with the Court and the Court shall not address their proposed limited construction of claim 9 at this late stage of proceedings." (ECF No. 283 at 5.) Judge Bongiovanni was well-positioned to evaluate the potential prejudice to the parties that would accompany allowing or excluding the challenged opinions and whether the Defendants had undermined the goal of the Local Patent Rules to "provide all parties with adequate notice and information with which to litigate their cases." (*Id.* at 4.) As noted above, Boehringer had explained in detail to Judge Bongiovanni how it would be unfairly disadvantaged by having to respond to Defendants' claim construction arguments through rebuttal expert reports. (ECF No. 293 at 17-21.) Given the prejudice Boehringer would suffer if the challenged opinions were allowed and Judge Bongiovanni's findings about the willfulness of the Defendants' failure to raise their arguments sooner, the Court concludes Judge Bongiovanni was within her discretion to exclude the challenged opinions.

Defendants urge us to weigh the so-called "*Pennypack* factors" enumerated by the Third Circuit for assessing whether evidence should be excluded under Rule 37(c). (ECF No. 286 at 12–15.) *See Meyers v. Pennypack Woods Home Ownership Assn.*, 559 F.2d 894, 904 (3d Cir. 1977). The *Pennypack* factors are: "(1) the prejudice or surprise to the party against whom the evidence would have been admitted; (2) the ability of the party to cure that prejudice; (3) the extent to which permitting the evidence might disrupt the orderly and efficient administration of the case; (4) the bad faith or willfulness, if any, that accompanies the untimely disclosure; and (5) the overall importance of the evidence proposed for exclusion." *See Webster v. Dollar Gen., Inc.*, 314 F.R.D.

367, 370 (D.N.J. 2016).[5] Defendants' arguments about these factors were raised before Judge Bongiovanni (*see, e.g.* ECF No. 266 at 4) and rejected for the reasons stated above. The Court finds no reason to disturb that ruling. *See Merck Sharp & Dohme Corp. v. Sandoz, Inc.*, No. 12-3289, 2014 WL 1494592, at *12 (D.N.J. Apr. 16, 2016) (concluding that the magistrate judge's decision to strike expert arguments made in violation of Local Patent Rules was within the discretion of the magistrate judge).

            4.     *Magistrate Judge's Authority*

Defendants argue Judge Bongiovanni lacked the authority to issue a claim construction ruling because there was never a designation by the Court for Judge Bongiovanni to hear and decide issues of claim construction. (ECF No. 286 at 11 n.5.) Boehringer disputes Judge Bongiovanni issued a claim construction ruling at all, and in any event submits Defendants waived that argument because they did not raise it with Judge Bongiovanni. (ECF No. 293 at 16-17.) In reply, Defendants argue Judge Bongiovanni had the authority to strike portions of Defendants' expert reports, but lacked authority to take the "extraordinary step of striking only Defendants' expert reports, knowing that only Plaintiffs' broad interpretation of the ordinary and customary meaning of claim 9 would remain." (ECF No. 300 at 8.)

For the reasons set forth in Section III.C.2, *supra*, the Court disagrees with Defendants' assertion that Judge Bongiovanni decided any issue of claim construction, and accordingly disagrees with Defendants' contention that Judge Bongiovanni exceeded her authority by "effectively" construing claim 9. Because the Court rejects the premise of Defendants' argument,

---

[5] Some courts have identified a sixth factor: the disclosing party's explanation for the failure to disclose. *See, e.g.*, *Steele v. Aramark Corp.*, No. 09-4340, 2012 WL 1067879, at *6 (D.N.J. Mar. 29, 2012).

it does not reach the question of whether Defendants waived their arguments about the scope of Judge Bongiovanni's authority to issue its ruling.

**IV.** **CONCLUSION**

For the reasons stated above, Mylan's appeal is **DENIED** and the Letter Order striking portions of Defendants' expert reports (ECF No. 283) is **AFFIRMED**.

**Date:** October 18, 2017 */s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**